UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SKULL VALLEY BAND OF GOSHUTE
INDIANS, *et al.*,

    Plaintiffs,

      v.

DIRK KEMPTHORNE,
in his official capacity as the
Secretary of the Interior, *et al.*,

    Defendants.

Civil Action No. 04-339 (CKK)

**MEMORANDUM OPINION**
(March 26, 2007)

      Currently pending before the Court are cross-motions for partial summary judgment filed

by Plaintiffs – the Skull Valley Band of Goshute Indians and Leon D. Bear, the Chairman of the

Skull Valley Band of Goshute Indians (collectively, "Plaintiffs") – and Defendants – Secretary of

the Interior, Deputy Secretary of the Interior,[1] and the United States Department of the Interior

(collectively "Defendants") – with respect to Plaintiffs' action brought under the Freedom of

Information Act ("FOIA"), 5 U.S.C. §522.  In addition, Defendants have filed a motion to strike

a Notice of Final Administrative Decision filed by Plaintiffs regarding a related administrative

proceeding, which the Court shall deny.  Upon a searching review of the pleadings filed by each

party, the attached memoranda, declarations, and exhibits, and the relevant case law, the Court

---

[1] At the time that Plaintiffs filed this action, the Secretary of the Interior was Gale Norton and the Deputy Secretary of the Interior was Stephen Griles.  As Plaintiffs sued the Secretary and Deputy Secretary in their official capacities, the proper defendants are currently Secretary of the Interior, Dirk Kempthorne, and Deputy Secretary of the Interior, P. Lynn Scarlett.  Compl. ¶¶ 4-5.

shall grant Defendants' partial Motion for Summary Judgment and shall deny Plaintiff's Cross-Motion for Partial Summary Judgment.

## I: BACKGROUND

Plaintiff Skull Valley Band of Goshute Indians (the "Band") is a federally-recognized Indian Tribe, which owns beneficial title to an Indian reservation set aside pursuant to the Treaty of October 12, 1863 between the United States and the Goship Indians.  Compl. ¶ 2.  Plaintiff Leon D. Bear is the Chairman of the Executive Committee of the Skull Valley Band of Goshute Indians.  *Id.* ¶ 3.  Defendants in this action are the Secretary of the Interior, the Deputy Secretary of the Interior, and the United States Department of the Interior.  *Id.* ¶¶ 4-6.

Plaintiffs devote substantial portions of their memorandum in support of their Cross-Motion for Partial Summary Judgment, their Statement of Material Facts accompanying their Cross-Motion for Partial Summary Judgment, and their Opposition to Defendants' Motion for Summary Judgment describing the events and circumstances that led them to file their FOIA request.  However, a party's "need or intended use for the documents is irrelevant to [that party's] FOIA action" and "has no bearing on the merits of [that party's] FOIA request."  *North v. Walsh*, 881 F.2d 1088, 1096-97 (D.C. Cir. 1989 (quoting *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 109 S. Ct. 1468, 1480, 103 L. Ed. 2d 774 (1989).  As Plaintiffs' detailed recitation of the facts leading up to the filing of their FOIA request is therefore entirely irrelevant to the FOIA action before this Court, the Court will limit its discussion of background facts to those related to Plaintiffs' FOIA request and Defendants'

response thereto.[2]

On May 5, 2003, Plaintiff Bear, on behalf of the Band, sent a FOIA request to Defendant Norton, with copies to nine offices within the Department of the Interior – the Office of the Deputy Secretary, the Office of the Assistant Secretary for Policy Management and Budget, the Office of the Assistant Secretary for Indian Affairs, the Office of the Assistant Secretary for Land and Minerals Management, the Office of Congressional and Legislative Affairs, the Office of Public Affairs, the Office of the Solicitor, the Office of Hearing and Appeals, and the Office of the Inspector General.  7/19/04 Decl. of Sue Ellen Sloca (hereinafter "Sloca Decl."), Ex. A (5/5/03 Letter from L. Bear to G. Norton).[3]  Plaintiffs' FOIA request asked Secretary Norton

> To disclose all records of communications since January 1, 2001 (including formal and informal communications, unsigned briefings, e-mail communications, and notes of telephone conversations) with officials and employees of the [ten offices to whom Plaintiffs' FOIA request was mailed], regarding the Skull Valley Band of Goshute Indians or the proposed Private Fuel Storage Facility which is the subject of a lease, which was approved by the Bureau of Indian Affairs on May 23, 1997.

*Id.* at 1-2.

---

[2]  Nevertheless, for the sake of providing the necessary background for Defendants' invocation of the deliberative process privilege, discussed below, the Court notes briefly that the Band entered into a lease of some of its reservation land for temporary storage of spent nuclear fuel rods from civilian reactors (hereinafter the "PFS lease").  Pls.' Stmt. ¶ 1.  At the time of the filing of the cross-motions for summary judgment, the Bureau of Indian Affairs ("BIA") had provisionally, but not finally, approved the PFS lease.  *Id.* ¶ 1, 3.  The BIA's final approval of the PFS lease, as well as the PFS lease itself, were conditioned on the issuance of a license for the storage project by the Nuclear Regulatory Commission (NRC) and the completion of a Final Environmental Impact Statement.  *Id.*  Furthermore, the PFS lease and storage project were opposed by various groups, including Utah political leaders and dissident members of the Band.  *Id.* ¶¶ 3, 6.

[3]  Plaintiffs and Defendants have both submitted copies of the communications exchanged between the parties regarding Plaintiffs' FOIA request.  For ease of reference, the Court shall refer to the copies attached as exhibits to the July 19, 2004 Declaration of Sue Ellen Sloca.

In addition, Plaintiffs' FOIA request sought "records of all such communications" with the following individuals or entities, including anyone on their staffs or anyone communicating on their behalf, as well as copies of communications among these individuals and entities to the extent that such communications were in the custody of the Department of the Interior: (1) the Governor of Utah, including communications from the Utah Department of Environmental Quality or the Office of the Utah Attorney General;  (2) current or former members of the Utah Congressional Delegation; (3) the White House or the Office of Management and Budget, or otherwise from the Executive Office of the President; (4) the Department of Energy; (5) the Department of Defense, including the Department of the Air Force; and (6) individual members of the Skull Valley Band, representatives of Ohngo Gaudadeh Devia (OGD), or attorneys representing either OGD or individual members of the Band.  *Id.* at 2.  Plaintiffs' FOIA request specifically stated that they were not seeking communications with the Bureau of Indian Affairs, the Bureau of Land Management, or the Nuclear Regulatory Commission.  *Id.*

The Secretary's copy of Plaintiff's FOIA request was received by the Office of Executive Secretariat and forwarded to the Office of the Secretary ("OS") FOIA office for action.  Defs' Stmt of Mat'l Facts Not in Dispute (hereinafter "Defs.' Stmt.") ¶ 2; Sloca Decl. ¶ 3.  The OS FOIA office received Plaintiffs' request on May 20 2003, and acknowledged receipt of Plaintiffs' request by letter dated May 22, 2003.  Defs.' Stmt. ¶ 2; Sloca Decl. ¶ 3, Ex. B (5/22/03 Letter from S. Sloca to L. Bear).  Also on May 22, 2003, the OS initiated a search for responsive documents in the Secretary's Immediate Office, in the nine additional offices to which Plaintiffs' FOIA request was addressed and mailed, and in two additional offices within the Office of the Secretary – the Office of Policy Analysis and the Office of Environmental Policy and

Compliance.  Defs.' Stmt. ¶ 3; Sloca Decl. ¶ 4.  By letter dated July 14, 2003, the OS provided

Plaintiffs with copies of responsive documents located in the Office of Hearings and Appeals and

the Office of the Solicitor.  Defs.' Stmt. ¶ 4; Pls.' Stmt. of Mat'l Facts Accompanying Pls.'

Cross-Motion for Summ. J. (hereinafter "Pls.' Stmt.") ¶ 12; Sloca Decl. ¶ 5, Ex. C (7/14/03

Letter from S. Sloca to L. Bear).  The OS provided Plaintiffs with 25 documents totaling 309

pages, but withheld portions of some documents pursuant to FOIA Exemption 5, 5 U.S.C. §

552(b)(5).  *Id.*

On August 5, 2003, the OS provided Plaintiffs with a second set of copies of responsive

documents, indicating that the documents were located in the Office of the Solicitor, the

Secretary's Immediate Office, the Office of the Deputy Secretary, the Office of Public Affairs,

the Office of Congressional and Legislative Affairs, the Office of the Assistant Secretary for

Land and Minerals Management, and the Office of the Assistant Secretary for Policy

Management and Budget.  Defs.' Stmt. ¶ 5; Pls.' Stmt. ¶ 13; Sloca Decl. ¶ 6, Ex. D (8/5/03 Letter

from S. Sloca to L. Bear).  The OS provided Plaintiffs with 67 documents totaling 414 pages, and

withheld portions of some documents pursuant to FOIA Exemptions 5 and 6, 5 U.S.C. §§

552(b)(5) and (b)(6).  *Id.*

By letter dated September 13, 2003, Plaintiffs appealed the OS' withholding and

redaction of documents pursuant to FOIA Exemption 5.  Defs.' Stmt. ¶ 6; Sloca Decl. ¶ 6; Pls.'

Stmt. ¶ 15; Pls.' Cross-Mot. for Partial Summ. J. (hereinafter "Pls.' Cross-Mot."), Ex. M

(9/13/03 Letter from L. Bear).  This appeal was followed by a September 23, 2003 Supplemental

Legal Memorandum from counsel for the Band supplementing the earlier appeal.  Pls.' Stmt. ¶

15; Pls.' Cross-Mot., Ex. N (9/23/03 Letter from T. Vollman).  The OS FOIA office did not

respond to Plaintiffs' appeal.  Pls.' Stmt. ¶ 16; Compl. ¶ 35.  Instead, on February 3, 2004, the

OS provided Plaintiffs with copies of two (2) responsive documents totaling four (4) pages

located in the Office of the Inspector General, but redacted certain information pursuant to FOIA

Exemption 6, 5 U.S.C. § 552(b)(6).  Defs.' Stmt. ¶ 7; Pls.' Stmt. ¶ 14; Sloca Decl. ¶ 7, Ex. E

(2/3/04 Letter from S. Sloca to L. Bear).[4]

Plaintiffs assert that "[u]nder 5 U.S.C. § 552(a)(6)(A)(ii), Defendants should have made a

determination with respect to Plaintiffs' administrative appeal in October 2003."  Compl. ¶ 35.

Having received no response to their administrative appeal, Plaintiffs filed the instant FOIA

action on March 2, 2004.  *Id.*  Plaintiffs' Complaint challenges Defendants' failure to respond to

Plaintiffs' administrative appeal within the time prescribed in 5 U.S.C. § 552(a)(6)(A)(ii) and

further alleges that Defendants "have unlawfully withheld and refused to disclose records,

including reasonably segregable portions thereof, on communications between Executive Branch

officials and persons outside of the Executive Branch, which records are within the scope of

Plaintiffs' Freedom of Information Act request of May 5, 2003 . . . ."  Compl. ¶¶ 36-39.  In

addition, Plaintiffs' Complaint alleges that Defendants denied Plaintiffs their rights to due

process of law under the Fifth Amendment to the United States Constitution, that Defendants

---

[4] Defendants' February 3, 2004 letter also indicates that the OS deleted from one
responsive document the name of a law enforcement agent pursuant to Exemption 7(C) of the
FOIA, 5 U.S.C. § 552(b)(7)(C).  Sloca Decl., Ex. E (2/3/04 Letter from S. Sloca to L. Bear).  In
their Opposition to Plaintiffs' Cross-Motion for Partial Summary Judgment, Defendants clarify
that the reference to Exemption 7(C) was inadvertent, and indeed, Defendants' *Vaughn* index
does not indicate that information was withheld based on Exemption 7(C).  Defs.' Opp'n at 10 n.
8.  Moreover, the Court notes that as Exemption 7(C) allows an agency to withhold information
"that could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5
U.S.C. § 552(b)(7)(C), even if Defendants had withheld the name of a law enforcement officer
on the grounds of Exemption 7(C), it appears that such withholding would have been proper.

violated the Administrative Procedure Act, 5 U.S.C. § 706, and that Defendants have treated

Plaintiffs unfairly and violated their trust responsibility to the Skull Valley Band.  Compl. ¶¶ 40-

45.  Only Plaintiffs' FOIA claims are at issue in the instant cross-motions for partial summary

judgment.

Defendants assert that the "OS was unable to complete its document production before

the Plaintiffs filed the instant law suit on March 2, 2004."  Defs.' Stmt. ¶ 8.  Nevertheless, by

letters dated April 4, 2004 and July 2, 2004, the OS provided Plaintiffs with copies of responsive

documents located in the Office of the Assistant Secretary for Indian Affairs, the Office of the

Deputy Secretary, and the Office of the Secretary.  *Id.* ¶ 9; Pls.' Stmt. ¶¶ 16-17; Sloca Decl. ¶ 8,

Exs. F (4/8/04 Letter from S. Sloca to L. Bear) and G (7/2/04 Letter from S. Sloca to L. Bear).  In

addition, in connection with the instant action, Defendants undertook a further review of the

documents previously withheld in whole or in part, and released documents and additional

portions of documents previously withheld in part along with the OS' July 2, 2004 letter.  Defs.'

Stmt. ¶ 10; Pls.' Stmt. ¶ 17; Sloca Decl. ¶ 9, Ex. G (7/2/04 Letter from S. Sloca to L. Bear).

On July 19, 2004, Defendants filed their Motion for Summary Judgment, and Plaintiffs

filed their Cross-Motion for Partial Summary Judgment. Along with their Motion for Summary

Judgment, Defendants submitted a *Vaughn* index, which describes each document withheld in

whole or in part from Defendants' FOIA production.  Sloca Decl. ¶ 10, Ex. H (*Vaughn* Index).

Also with their Motion for Summary Judgment, Defendants provided Plaintiffs with copies of

records previously withheld in whole or in part, which Defendants determined to release based

on their segregability analysis.  Defs.' Stmt. ¶ 11; Sloca Decl. ¶ 11, Ex. I.  Plaintiffs filed their

Opposition to Defendants' Motion for Summary Judgment on August 2, 2004, and Defendants

filed their Opposition to Plaintiffs' Cross-Motion for Partial Summary Judgment on August 3,

2004.

Thereafter, on August 6, 2004 and March 2, 2005, Plaintiffs filed Notices of decisions in

what Plaintiffs considered to be a related case and administrative proceeding.  On September 22,

2005, Plaintiffs filed a Notice of Final Administrative Decision in Related Proceeding, which

Defendants subsequently objected to and moved to strike on October 7, 2005.  Finally, on March

15, 2006, Plaintiffs filed a Notice of Related Final Agency Action.

## II: LEGAL STANDARD

In reviewing a motion for summary judgment under the FOIA, the Court must conduct a

*de novo* review of the record.  *See* 5 U.S.C. § 552(a)(4)(B).  In the FOIA context, "*de novo*

review requires the court to 'ascertain whether the agency has sustained its burden of

demonstrating that the documents requested are not "agency records" or are exempt from

disclosure under the FOIA.'"  *Assassination Archives & Research Ctr. v. Cent. Intelligence*

*Agency*, 334 F.3d 55, 57 (D.C. Cir. 2003) (quoting *Summers v. Dep't of Justice*, 140 F.3d 1077,

1080 (D.C. Cir. 1998)).

Summary judgment is proper when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists only when there is

sufficient evidence such that a reasonable juror could find for the party opposing the motion.

*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251-42, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986).

Furthermore, entry of summary judgment is mandated against a party if, after adequate time for

discovery and upon motion, the party fails to make a showing sufficient to establish the existence

of an element essential to that party's case, and on which that party will bear the burden of proof

at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

FOIA cases are typically and appropriately decided on motions for summary judgment.

*Miscavige v. Internal Revenue Serv.*, 2 F.3d 366, 368 (11th Cir. 1993); *Rushford v. Civiletti*, 485

F. Supp. 477, 481 n.13 (D.D.C. 1980).   Under FOIA, all underlying facts and inferences are

analyzed in the light most favorable to the FOIA requester; as such, only after an agency seeking

it proves that it has fully discharged its FOIA obligations is summary judgment appropriate.

*Moore v. Aspin*, 916 F. Supp 32, 35 (D.D.C. 1996) (citing *Weisberg v. Dep't of Justice*, 705 F.2d

1344, 1350 (D.C. Cir. 1983)).   The agency bears the burden of demonstrating that its search was

adequate and in good faith.  *Tarullo v. Dep't of Defense*, 170 F. Supp. 2d 271, 274 (D. Conn.

2001).  A good faith search effort uses methods that can be reasonably expected to produce the

information requested.  *See Ogelsby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

　　Congress enacted FOIA for the purpose of introducing transparency to government

activities.  *See Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 88 (D.C. Cir. 1984).   Congress

remained sensitive, however, to the need to achieve balance between this objective and the

vulnerability of "legitimate governmental and private interests [that] could be harmed by release

of certain types of information."  *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*,

975 F.2d 871, 872 (D.C. Cir. 1992); *see also Summers v. Dep't of Justice*, 140 F.3d 1077, 1079

(D.C. Cir. 1998).   Accordingly, FOIA provides nine exemptions pursuant to which an agency

may withhold requested information.  *See* 5 U.S.C. §§ 552(a)(4)(B), (b)(1)-(9).   The agency must

demonstrate the validity of any exemption that it asserts.  *See id.*; *Beck v. Dep't of Justice*, 997

9

F.2d 1489, 1491 (D.C. Cir. 1993) ("[c]onsistent with the purpose of the Act, the burden is on the agency to justify withholding requested documents").  To satisfy this burden, the agency may provide a plaintiff "with a *Vaughn* index, which must adequately describe each withheld document, state which exemption the agency claims for each withheld document, and explain the exemption's relevance." *Johnson v. Exec. Office for U.S. Att'ys*, 310 F.3d 771, 774 (D.C. Cir. 2002); *see also Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973). In addition, summary judgment may be granted on the basis of the agency's accompanying affidavits or declarations if they describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  These affidavits may be submitted by an official who coordinated the search, and need not be from each individual who participated in the search.  *See SafeCard Servs. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

There is no set formula for a *Vaughn* index; so long as the agency provides the Court with materials providing a "reasonable basis to evaluate the claim of privilege," the precise form of the agency's submission – whether it be an index, a detailed declaration, or a narrative – is immaterial.  *Gallant v. Nat'l Labor Relations Bd.*, 26 F.3d 168, 173 (D.C. Cir. 1994) (internal citations omitted).  While *Vaughn* indexes are generally discretionary, affidavits alone may not suffice once it is established that records and documents are in a governmental agency's possession.  *Miscavige*, 2 F.3d at 368 (citing *Stephenson v. Fed. Bureau of Investigation*, 629 F.2d 1140, 1144-45 (5th Cir. 1980)).  Therefore, it is in a governmental agency's best interest to

provide a *Vaughn* index when claiming privilege, should it seek to satisfy its disclosure burden.

Courts must "accord substantial weight" to an agency's affidavit regarding FOIA exemptions.  5 U.S.C. § 552(a)(4)(B) (2004); *see also Carney v. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994), *cert. denied*, 513 U.S. 823, 115 S. Ct. 86, 130 L. Ed. 2d 38 (1994) ("Affidavits submitted by an agency are 'accorded a presumption of good faith.'") (quoting *SafeCard Servs., Inc.*, 926 F.2d at 1200).  Indeed, since FOIA exemptions are narrowly construed, should an agency correctly show that the FOIA does not apply to withheld material, the Court's review of the agency's decision is limited to determining whether the agency abused its discretion.  *Mead Data Cent. Inc. v. Dep't of Air Force*, 566 F.2d 242, 259 (D.C. Cir. 1977).  Therefore, should an exemption correctly apply, an agency's justification for withholding information need not allude to a specific injury.  *See id.* at 258-59 (permitting the agency to rely upon the explanation that disclosure "would impair the deliberative process . . . by impairing the free and frank exchange of ideas among [agency] personnel").

Moreover, the agency must detail what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document.  *Mead Data Cent. Inc.*, 566 F.2d at 261.  Any non-exempt information that is reasonably segregable from the requested records must be disclosed.  *Ogelsby*, 79 F.3d at 1178.  In addition, district courts are required to consider segregability issues *sua sponte* even when the parties have not specifically raised such claims.  *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

In opposing a motion for summary judgment, a plaintiff must offer more than conclusory statements.  *See Broaddrick v. Exec. Office of President*, 139 F. Supp. 2d 55, 65 (D.D.C. 2001)

11

(citing *Laningham v. United States Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987)).  Indeed, a

plaintiff pursuing an action under FOIA must establish that either:  (1) the *Vaughn* index does not

establish that the documents were properly withheld; (2) the agency has improperly claimed an

exemption as a matter of law; or (3) the agency has failed to segregate and disclose all non-

exempt material in the requested documents.  *See Perry-Torres v. Dep't of State*, 404 F. Supp. 2d

140, 142 (D.D.C. 2005); *Twist v. Ashcroft*, 329 F. Supp. 2d 50, 53 (D.D.C. 2004) (citing *Piper &*

*Marbury, LLP v. U.S. Postal Serv.*, Civ. No. 99-2383, 2001 WL 214217, at *2 (D.D.C. Mar. 6,

2001)).

### III:  DISCUSSION

The Freedom of Information Act requires federal agencies, in responding to a request for

information, to: (1) conduct an adequate search for that information through reasonable efforts;

(2) provide the information to the requester, unless it falls within a FOIA exemption; and (3)

provide to a requester any information that can reasonably be segregated from the exempt

information.  5 U.S.C. § 552(a)(3); 5 U.S.C. § 552(b).  In response to Plaintiffs' FOIA request,

Defendants have withheld portions of documents under Exemptions 5 and 6 of the FOIA, 5

U.S.C. §§ 522(b)(5) and (b)(6).  Plaintiffs do not challenge Defendants' withholding of portions

of documents under Exemption 6, but assert that Defendants have improperly invoked

Exemption 5 by misapplying the deliberative process privilege encompassed therein.  Plaintiffs

further argue that Defendants have failed to conduct an adequate search, that Defendants'

*Vaughn* index is insufficient, and that Defendants have not released all reasonably segregable

factual material.  As a result, Plaintiffs assert that this Court should deny Defendants summary

judgment and should instead order Defendants to produce all documents withheld in whole or in

part from Defendants' FOIA production.  The Court finds that Defendants have met the standard

for summary judgment by demonstrating that they conducted an adequate search, properly

invoked FOIA Exception 5, and produced all reasonably segregable factual material.

A.   *The Court Shall Deny Defendants' Motion to Strike Plaintiffs' Notice of Final Administrative Decision in Related Proceeding*

As discussed above, subsequent to the briefing of the parties' cross-motions for partial

summary judgment, Plaintiffs submitted to the Court a number of Notices of decisions in

administrative and judicial actions that Plaintiff termed "related" to the instant action.  All of

these Notices purport to advise the Court of developments in the events that led to Plaintiffs'

filing of their FOIA request; however, as noted above, these events are of no relevance to

Plaintiffs' claims under the FOIA and the Court will not consider them in addressing the cross-

motions for summary judgment.  Nevertheless, the Court notes that insofar as Plaintiffs may elect

to pursue the due process and APA claims included in their March 2, 2003 Complaint, Plaintiffs'

Notices may be relevant to those claims.

On October 7, 2005, Defendants filed a motion to strike Plaintiffs' Notice of Final

Administrative Decision in Related Proceeding, arguing that Local Civil Rule 40.5 does not

encompass administrative actions in the definition of "related cases."  Defs.' Obj. and Mot. to

Strike at 1.  Defendants do not indicate the legal framework on which they rely in moving to

strike Plaintiffs' Notice, and the Court notes that although Federal Rule of Civil Procedure 12(f)

allows the Court to strike from a "pleading" any insufficient defense or any redundant,

immaterial, impertinent, or scandalous matter in order to avoid the time, effort, and expense

necessary to litigate spurious issues, Rule 7(a) clarifies that a "pleading" encompasses a

complaint, answer, reply to a counterclaim, answer to a cross-claim, third-party complaint, or

third-party answer.  *See* Fed. R. Civ. P. 12(f); Fed. R. Civ. P. 7(a).  As such, by its plain

language, Federal Rule of Civil Procedure 12(f) cannot be used to strike a Notice to the Court.

Moreover, Defendants have not even suggested that Plaintiffs' Notice contains any redundant,

immaterial, impertinent, or scandalous matter.  The Court shall therefore deny Defendants'

motion to strike Plaintiffs' Notice of Final Administrative Decision in Related Proceeding.

> B.      *Defendants Have Met the Standard for Summary Judgment By Conducting An Adequate Document Search*

In determining the adequacy of a FOIA search, the Court is guided by principles of

reasonableness.  *Ogelsby*, 920 F.2d at 68.  To obtain summary judgment on the issue of the

adequacy of the records search, an agency must show "viewing the facts in the light most

favorable to the requester, that . . . [it] has conducted a 'search reasonably calculated to uncover

relevant documents.'"  *Steinberg v. Dep't. of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting

*Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).  To meet its burden, the

agency may submit affidavits or declarations that explain both in reasonable detail and in a non-

conclusory fashion the scope and method of the agency's search.  *Perry v. Block*, 684 F.2d 121,

126 (D.C. Cir. 1982).  In the absence of contrary evidence, such affidavits or declarations are

sufficient to demonstrate an agency's compliance with the FOIA.  *Id.* at 127.  An agency must

show that it made a "good faith effort to conduct a search for the requested records, using

methods which can be reasonably expected to produce the information requested."  *Ogelsby*, 920

F.2d at 68; *see Campbell*, 164 F.3d at 27.  An agency's search need not be exhaustive, merely

reasonable.  *See W. Ctr. for Journalism*, 116 F. Supp. 2d at 8 (citing *Shaw v. Dep't of State*, 559

F. Supp. 1053, 1057 (D.D.C. 1983)).

In the present case, Defendants have demonstrated that their search was adequate and reasonable.  In support of their Motion for Summary Judgment, Defendants submitted the July 19, 2004 declaration of Sue Ellen Sloca, the FOIA Officer for the Office of the Secretary, United States Declaration of the Interior.  Sloca Decl. ¶ 1.  Ms. Sloca has held the position of FOIA Officer for ten years and is familiar with the steps taken by the Department of the Interior in response to Plaintiffs' FOIA request.  *Id.*  Ms. Sloca's declaration describes the process by which Defendants responded to Plaintiffs' FOIA request; as noted above, the OS searched for responsive documents in the Secretary's Immediate Offices, in the nine offices to which Plaintiffs' FOIA request was addressed and mailed, and in two additional offices within the Office of the Secretary – the Office of Policy Analysis and the Office of Environmental Policy and Compliance.  *Id.* ¶ 4.

Furthermore, in support of their Opposition to Plaintiffs' Cross-Motion for Partial Summary Judgment, Defendants submitted the July 29, 2004 Declaration of Nancy Appler, the Staff Assistant within the Office of Congressional and Legislative Affairs in the OS.  7/29/04 Decl. of Nancy Appler (hereinafter "Appler Decl.") ¶ 1.  Ms. Appler has held her current position, or similar positions, for the past twenty years, and is responsible for responding to FOIA requests for information, including coordinating searches within the OS and in other offices of the Department of the Interior.  *Id.*  In connection with Plaintiffs' FOIA request, Ms. Appler was responsible for obtaining responsive documents from the Secretary's Immediate Offices.  *Id.* ¶ 2.  Ms. Appler avers that she "transmitted [Plaintiffs'] FOIA request to the offices where [she] deemed it was possible to find responsive records" and "specifically requested 19

15

individuals to search for responsive records." *Id.* Ms. Appler also details the offices and files in which searches for responsive documents were conducted, and indicates that additional searches were conducted in the Secretary's Immediate Offices and the Office of the Deputy Secretary in conjunction with the instant FOIA litigation and that Defendants continued to produce responsive documents to Plaintiffs as they were located. *Id.* ¶¶ 3, 5.

Plaintiffs' Cross-Motion for Partial Summary Judgment and Opposition to Defendants' Motion for Summary Judgment contain a number of arguments in support of their assertion that Defendants have failed to demonstrate that they conducted an adequate search for responsive documents. Each of Plaintiffs' arguments, however, fail to overcome Defendants' declarations, which are afforded an assumption of good faith, and which establish the adequacy of Defendants' search. First, Plaintiffs suggest that the inadequacy of Defendants' search is demonstrated by the fact that Defendants' production of responsive documents stretched over the course of roughly 14 months and included a number of piecemeal productions, many of which came after Plaintiffs filed the instant lawsuit. *See* Pls.' Cross-Mot. at 9-10. It is, indeed, true that the FOIA contains a 20-day time limit within which an agency is supposed to produce documents in response to a FOIA request, *see* 5 U.S.C. §§ 552(a)(6)(A)(I)-(ii), and that many of Defendants' productions in response to Plaintiffs' FOIA request fell well outside that time limit. However, as the D.C. Circuit has recognized, "delay alone cannot be said to indicate an absence of good faith." *Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 355 (D.C. Cir. 1979), *cert. denied*, 445 U.S. 927 (1980). Moreover, the fact that Defendants conducted ongoing searches for responsive documents and released documents in a piecemeal fashion cannot demonstrate bad faith because "if the release of previously withheld materials were held to constitute evidence of present 'bad

16

faith,' similar evidence would exist in every FOIA case involving additional releases of documents after the filing of suit." *Ground Saucer Watch v. Cent. Intelligence Agency*, 692 F.2d 770, 772 (D.C. Cir. 1981) (citation omitted).

Second, Plaintiffs assert that Defendants' search was inadequate because Defendants' FOIA production did not include various types of documents that Plaintiffs believe should have been located in response to their FOIA request.  However, Plaintiffs offer nothing more than their self-serving speculation that such documents ever existed and would have been retained in Defendants' files.  Specifically, Plaintiffs point to meetings that took place during the time period covered by Plaintiffs' FOIA request between members of the Department of the Interior and, among others, the Governor of Utah and members of the Utah Congressional Delegation, and state that "it is difficult to believe that there were no note-takers" at these meetings.  Pls.' Cross-Mot. at 11.  This is, of course, mere speculation and, as Defendants rightly argue, "high-level officials do not always take or have notes taken at meetings."  Defs.' Opp'n at 5.  Further, as Defendants also point out, Plaintiffs base their assumption that notes responsive to their FOIA request would have been generated during a February 25, 2003 meeting between Secretary Norton and then-Utah Governor Leavitt on a calendar entry reflecting that meeting, notwithstanding the fact that that calendar entry, unlike every other calendar entry of record, does not indicate that the February 25, 2003 meeting related to the Band in any way. *Id.*; Pls' Cross-Mot., Ex. D at 2-7.  Of course, however, "[a]gency affidavits enjoy a presumption of good faith, which will withstand purely speculative claims about the existence and discoverability of other documents." *Ground Saucer Watch*, 692 F.2d at 771 (citing *Goland*, 607 F.2d at 355).

Plaintiffs also argue that Defendants' search was inadequate because Plaintiffs cannot

17

identify which documents Defendants produced from the Office of the Deputy Secretary and the Office of Congressional and Legislative Affairs, offices which Plaintiffs speculate would be likely to contain responsive documents. *See* Pls.' Cross-Mot. at 11-12; Pls.' Opp'n at 13-15. Plaintiffs ignore the fact that the August 5, 2003 letter accompanying Defendants' production of that date indicates that the production includes documents from the Office of the Deputy Secretary and the Office of Congressional and Legislative Affairs. *See* Sloca Decl., Exs. D (8/5/03 Letter from S. Sloca to L. Bear, indicating documents produced from the Office of the Deputy Secretary and the Office of Congressional and Legislative Affairs). In addition, the Court notes that Ms. Sloca avers that the OS produced documents from the Office of the Deputy Secretary as part of the July 2, 2004 release of documents. Sloca Decl. ¶ 8. While Plaintiffs may be frustrated by their inability to correlate specific documents with the office in which those documents were located, Defendants are under no legal obligation to identify the source of each responsive document. Moreover, while Plaintiffs might have suspected that more responsive documents would be found in the Office of the Deputy Secretary and the Office of Congressional and Legislative Affairs, they have offered nothing more than their speculation that "[t]here must have been many more non-privileged communications during the early months of 2003." Pls.' Opp'n at 16.

Finally, Plaintiffs assert that "there is considerable evidence that there has been an intentional failure by officials of the Interior Department to identify and disclose records clearly within the scope of Plaintiffs' FOIA request." *Id.* at 13. In support of this statement Plaintiffs point to four documents, ostensibly responsive to Plaintiffs' FOIA request, which Plaintiffs contend they obtained from a newspaper reporter and which they believe should have been

included in Defendants' FOIA production. *Id.* at 13-14; Pls.' Cross-Mot. at 11-12. However, Ms. Appler's Declaration provides a perfectly plausible explanation for Defendants' failure to include these documents in their FOIA production – the documents were located in the files of the Bureau of Land Management ("BLM"), and Plaintiffs' FOIA request specifically stated that they were not seeking records of communications with the BLM. Appler Decl. ¶ 6; Sloca Decl., Ex. A (5/5/03 Letter from L. Bear to G. Norton) ("we note what we are **not** requesting at this time: communications with the . . . Bureau of Land Management.") (emphasis in original). In light of the fact that Plaintiffs specifically exempted communications with the BLM from their FOIA request, the Court cannot conclude that Defendants failed to conduct an adequate search because they did not locate these four documents. *See Ground Saucer Watch*, 692 F.2d at 772 ("The issue is not whether any further documents might conceivably exist but whether [Defendants'] search for responsive documents was adequate.") (quoting *Goland*, 607 F.2d at 369).

In sum, Plaintiffs' speculative assertions regarding the alleged inadequacy of Defendants' search fail to overcome Defendants' Declarations, which indicate that Defendants have met their FOIA burden by conducting a reasonable, good faith search.

C.     *Defendants'* Vaughn *Index Sufficiently Allows the Court to Evaluate Defendants' Claims of Privilege*

In opposing Defendants' Motion for Summary Judgment, Plaintiffs assert that they are seeking records of communications between officials in the Department of the Interior and third parties outside the agency relating to the Band and its efforts to secure the PFS lease. Plaintiffs argue that communications between the agency and third parties are non-privileged, but that

Defendants' *Vaughn* index does not allow Plaintiffs or the Court to determine whether Defendants are improperly withholding non-privileged communications.  *See* Pls.' Opp'n at 17-21.  While there is no set formula for a *Vaughn* index, the agency must provide a "relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Cent.*, 566 F.2d at 251.  Furthermore, the agency may rely on detailed affidavits or declarations, or may submit documents for *in camera* review, because  "the materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege." *Gallant*, 26 F.3d at 172-73 (quoting *Delaney, Migdall & Young, Chartered v. IRS*, 826 F.2d 124, 128 (D.C. Cir. 1987)).

Here, Plaintiffs assert that "[n]one of the items in the *Vaughn* index in this case reveals anything about agency officials' communications with third parties, much less provides a justification for redacting them from the subject records.  Yet it is clear that many of the identified records *likely* refer to third party communications." Pls.' Opp'n at 18 (emphasis added).  Plaintiffs' challenge to Defendants' *Vaughn* index thus appears, like their challenges to the adequacy of Defendants' search, to be based largely on Plaintiffs' speculation as to what information they believe might be contained in the documents withheld in whole or in part. Specifically, Plaintiffs point to three documents included on Defendants' *Vaughn* index and speculate that "it is highly likely that [these] documents refer[] to positions and statements taken previously by third parties, and possibly, also representations and statements made by Interior

officials to those third parties." Pls.' Opp'n at 19.[5]  However, Plaintiffs fail to demonstrate that

any of the portions redacted from the documents produced in response to their FOIA request

actually contain non-privileged information.  While the Court shall discuss in greater detail

below Plaintiffs' specific challenges to Defendants' invocation of FOIA Exemption 5, it suffices

at this point to note that Plaintiffs' mere speculation that documents created by agency officials

are *likely* to contain information concerning positions taken by third parties does not demonstrate

that Defendants' *Vaughn* index is insufficient.[6]  Moreover, the Court's review of the documents

released by Defendants as Exhibit I to the Sloca Declaration – which the Court will view as a

sample of the documents Defendants have withheld in whole or in part – suggests that

Defendants have released precisely the type of non-privileged third-party information that

Plaintiffs speculate has been improperly withheld.  *See, e.g.,* Sloca Decl., Ex. I at 17-19

---

[5] Defendants' *Vaughn* index includes 24 pages of entries, with two or three entries per page, for a total of 50 documents, but does not individually number the documents withheld in whole or in part.  For ease of reference, the Court shall identify *Vaughn* index entries by the page on which they are located and their location within that particular page, *e.g.*, "p. 1 n. 2."

[6] Plaintiffs also assert that Defendants' *Vaughn* index is insufficient because Plaintiffs received a document marked "Attorney-Client Privileged" while the *Vaughn* index entry for that document indicates that it was withheld on the basis of the deliberative process privilege.  Pls.' Opp'n at 20 (referring to memo from B. Bettenberg noted on page 17 of Defendants' *Vaughn* index).  However, as Plaintiffs themselves argue, neither the author nor the recipient of the document is an attorney.  *Id.*  In light of this fact, and the fact that Defendants' *Vaughn* index does not indicate that the document was withheld on the basis of the attorney-client privilege, *see* Sloca Decl., Ex. H at 17 n. 2, it appears that Defendants' earlier invocation of the attorney-client privilege was in error.  In addition, Plaintiffs alternately claim to be confused by the *Vaughn* index reference at page 16 to redactions within three pages of notes dated 2/20/03 released by Defendants with their Motion for Summary Judgment, Pls.' Opp'n at 18 n.6, and to believe that the notes are not included in the *Vaughn* index at all, *id.* at 20.  However, the *Vaughn* index entry in question clearly indicates that Defendants have released a calendar entry dated 4/23/02 along with attachments to that calendar entry, and that the attachments include three pages of handwritten notes dated 2/20/03, of which Defendants have withheld portions.  Sloca Decl., Ex. H at 16 n. 1.

(Handwritten notes of 2/20/03 meeting).

Defendants' *Vaughn* index specifically identifies the 50 documents withheld in whole or in part by providing information about the date, author, recipient, and subject of each document. *See* Sloca Decl., Ex. H.  Further, Defendants' *Vaughn* index indicates the specific portion withheld from each document, the FOIA exemption on which Defendants rely for each withholding, and the reasons justifying the withholding on the basis of the exemption invoked. As such, the Court concludes that Defendants' *Vaughn* index sufficiently allows the Court to evaluate Defendants' claims of privilege.

     **D.**    *Defendants Have Carried Their Burden With Respect to FOIA Exemption 5*

As noted above, Defendants have withheld documents in whole or in part on the basis of FOIA Exemptions 5 and 6, but Plaintiffs only challenge Defendants' invocation of Exemption 5. *See* Pls.' Opp'n at 10.  Furthermore, while Defendants have invoked the deliberative process, attorney-client, and attorney work-product privileges encompassed within Exemption 5, *see* Defs.' Mot. for Summ. J. at 8-9; Sloca Decl., Ex. H, Plaintiffs only challenge Defendants' application of the deliberative process privilege, *see* Pls.' Cross-Mot. at 13-21; Pls.' Opp'n at 22-24.  As such, the Court shall focus its attention on Defendants' reliance on the deliberative process privilege within FOIA Exemption 5.[7]

_____

[7] Exemption 6 applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy." 5 U.S.C. § 552(b)(6).  As Plaintiffs do not challenge Defendants' reliance on Exemption 6, the Court will note only that Defendants appear to have properly invoked Exemption 6 in withholding the names, telephone numbers, and cellular telephone numbers of individuals named in the records. *See* Sloca Decl. ¶¶ 5, 7, 9, Exs. D (8/5/03 Letter from S. Sloca to L. Bear) at 4; E (2/3/04 Letter from S. Sloca to L. Bear) at 2; and F (4/8/04 Letter from S. Sloca to L. Bear) at 2. Furthermore, although Plaintiffs do not challenge Defendants' reliance on the attorney-client and attorney work-product privileges, the Court notes that it appears from Defendants' *Vaughn* index that they have

An agency bears the burden of demonstrating the validity of any exemption that it asserts. *See* 5 U.S.C. § 552(a)(4)(B). Exemption 5 permits the withholding of "interagency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Courts have "construed this exemption to encompass the protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context," including "materials which would be protected under the attorney-client privilege, the attorney work-product privilege, or the executive 'deliberative process privilege." *Taxation With Representation Fund v. IRS,* 646 F.2d 666, 676 (D.C. Cir.1981) ("*TWRF* ") (citations omitted). Here, Defendants rely on the deliberative process privilege to withhold, in whole or in part, 45 documents. *See* Sloca Decl., Ex. H.

Exemption 5 shields from the mandatory disclosure requirements of the FOIA the deliberative process that precedes most decisions of government agencies. *Envtl. Prot. Agency v. Mink*, 410 U.S. 73, 89-91, 93 S. Ct. 327, 35 L. Ed. 2d. 119 (1973); *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1047 (D.C. Cir. 1982). The exemption protects not only communications that are deliberative in nature, but all communications which, if revealed, would expose to public view the deliberative process of an agency. *Id* at 1048. Three policy purposes constitute the bases for this privilege: (1) to encourage open, frank discussions on matters of policy between

---

appropriately asserted these privileges because, as Plaintiffs themselves stress, various litigation was ongoing during the period covered by Plaintiffs' FOIA request regarding the Band's activities and the PFS lease. Pls.' Stmt. ¶¶ 6-8. As such, it appears that the documents Defendants have withheld in whole or in part were either created by attorneys in anticipation of litigation, or represent the exchange of legal advice between the Department of the Interior and its attorneys concerning the Department's approval of the PFS lease. *See* Sloca Decl., Ex. H.

subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they are finally adopted; and (3) to protect against the public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's action. *See Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 866 (D.C. Cir. 1980). Discussions among agency personnel about the relative merits of various positions which may be adopted are just as a much a part of the deliberative process as the actual recommendations and advice which are agreed upon. *See Mead Data*, 566 F.2d at 257. Congress created this exception in the FOIA because it believed that forcing agencies to "operate in a fishbowl" would undermine the quality of administrative decision-making by preventing the full and frank exchange of ideas on legal and policy matters. *Mead Data*, 566 F.2d at 256 (citing to S. Rep. No. 813, 89th Cong., 1st Sess. 9, and H.R. Rep. No. 1497, 89th Cong., 2d Sess. 10 (1966)). Consistent with congressional intent on the subject, this Circuit has construed Exemption 5 "as narrowly as consistent with efficient Government operation." *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 773 (D.C. Cir. 1988) (en banc) (citing *Mead Data*, 566 F.2d at 256).

For the privilege to apply under Exemption 5, this Court must determine the material to be both predecisional and deliberative. *Wolfe*, 839 F.2d at 774 (citing *Mink.*, 410 U.S. at 88, 93 S. Ct. 827). "A document is predecisional if it was prepared in order to assist an agency decision maker in arriving at his decision, rather than to support a decision already made." *Petroleum Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (citing *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184, 95 S. Ct. 1491, 44 L. Ed. 2d 57 (1975)). At its most basic, the courts have held that a document is deliberative in nature if "it

reflects the give-and-take of the consultative process." *Coastal States*, 617 F.2d at 866.  Because

Exemption 5's goal is to "prevent injury to the quality of agency decisions," the deliberative

process privilege can only apply to deliberative processes the results of which are or will be

agency policy.  *See Petroleum Info. Corp.*, 976 F.2d at 1434 (citing *Sears*, 421 U.S. at 151, 95 S.

Ct. 1504).  "The exemption thus covers recommendations, draft documents, proposals,

suggestions, and other subjective documents which reflect the personal opinions of the writer

rather than the policy of the agency," *Coastal States*, 617 F.2d at 866, as well as documents that

reflect deliberations comprising the process by which government policy is formulated, *Mead

Data*, 566 F.2d at 256.

        Here, Defendants have invoked the deliberative process privilege (alone or in conjunction

with the attorney-client privilege) in withholding 18 documents in whole and 27 documents in

part.  *See* Sloca Decl., Ex. H.  For 23 of these 45 documents, Defendants have invoked the

attorney-client privilege in addition to the deliberative process privilege.  *Id.*  As an initial matter,

the Court notes that all of the documents that Defendants have withheld in whole or in part on

the grounds of the deliberative process privilege date from the period during which the BIA final

approval of the PFS lease was pending.  *See* Sloca Decl., Ex. H.  Plaintiffs do not challenge

Defendants' assertion that the documents withheld are predecisional and, indeed, Plaintiffs'

extensive description of the factual background leading to their FOIA request clearly

demonstrates that the documents in question are predecisional.  *See* Pls.' Stmt. ¶¶ 1-10

(describing controversy surrounding whether the BIA/Department of the Interior should grant

final approval of the PFS lease).

        In their Cross-Motion for Partial Summary Judgment, Plaintiffs generally assert that

Defendants have misapplied Exemption 5 because it "does not apply to communications with state government officials or Members of Congress, as they are not within the Executive Branch." Pls.' Cross-Mot. at 14. This assertion is inapposite, however, because Defendants' *Vaughn* index demonstrates that they have only relied on Exemption 5 to withhold inter-agency or intra-agency documents, Sloca Decl., Ex. H; the *Vaughn* index does not suggest that Defendants have withheld documents received from or sent to third parties outside the Executive Branch, nor do Plaintiffs provide evidence that such documents have been withheld.

Plaintiffs also assert – again without specific record support – that Defendants have withheld documents that "must be part of the administrative record in any judicial review of the agency action under the Administrative Procedure Act (APA)," and that this is particularly true because the Department of the Interior has an obligation to promote the economic development of Indian reservations. Pls.' Cross-Mot. at 14-18. As a result, Plaintiffs argue, Defendants may not withhold documents pursuant to FOIA Exemption 5 because those documents would not be privileged from discovery in litigation with the agency. Pls.' Cross-Mot. at 14. Plaintiffs do not identify any specific documents that they believe would be subject to civil discovery and, indeed, Plaintiffs' argument relies on circular reasoning. Insofar as FOIA Exemption 5 incorporates the ordinary civil discovery privileges, *see TWRF,* 646 F.2d at 676, if Defendants have properly applied the deliberative process privilege, that privilege would apply equally in civil litigation. The Court shall therefore continue to assess whether Defendants have demonstrated that they properly invoked FOIA Exemption 5. The Court shall first address the specific withholdings challenged by Plaintiffs, before continuing to a general review of the entries included in Defendants' *Vaughn* index.

### 1. *Drafts of Letter from Stephen Griles to Leon Bear*

In both their Cross-Motion for Partial Summary Judgment and their Opposition to Defendants' Motion for Summary Judgment, Plaintiffs claim that Defendants have improperly withheld drafts of a letter that then-Deputy Secretary of the Interior Stephen Griles sent to Plaintiff Bear on March 27, 2003 (hereinafter the "Griles Letter"). Pls.' Cross-Mot. at 20-21; Pls.' Opp'n at 23-24. These drafts represent 14 of the 18 documents entirely withheld from Defendants' FOIA production. As an initial matter, the Court notes that draft documents are exempt from disclosure under the deliberative process privilege because they "reflect the personal opinions of the writer rather than the policy of the agency." *Coastal States*, 617 F.2d at 866. Furthermore, disclosure of draft documents "could lead to confusion of the public" because they might "suggest 'as agency position that which is as yet only personal position.'" *Russell*, 682 F.2d at 148 (quoting *Coastal States*, 617 F.2d at 866). Finally, because the drafting process is itself deliberative in nature, the disclosure of draft documents could "expose to public view the deliberative process of an agency." *Id.* at 1048 (citing *Montrose Chem. Corp. of California v. Train*, 491 F.2d 63 (D.C. Cir. 1974). Plaintiffs do not challenge these assertions, but instead argue that there is "strong" "circumstantial evidence" "that one or more drafts of that letter were shared with the Governor of Utah, and that Defendants have thus lost any right they might otherwise have to protect those drafts under the deliberative process privilege." Pls.' Opp'n at 23.

In support of their assertion that the Griles Letter was shared with the Governor of Utah Plaintiffs focus on a handwritten message indicating that on March 17, 2003, Gary Doxey, Chief Counsel to then-Utah Governor Leavitt, called Counselor Michael Rossetti of the Department of

the Interior regarding a "faxed letter (Goshute)."  Pls.' Stmt. ¶ 8, Ex. E (3/17 Phone Message);

Pls.' Opp'n at 23.  Plaintiffs also submit portions of various drafts of the Griles Letter which

indicate that drafts of the Letter were circulating within the Department of the Interior around

March 17, 2003.  Pls.' Stmt. ¶ 8, Ex. F (drafts dated 3/7/03, 3/10/03 and 3/12/03).  However, the

phone message itself indicates only that Mr. Doxey called Mr. Rossetti regarding a "faxed letter

(Goshute)."  Pls.' Stmt., Ex. E.  There is no way of determining from this one-line message that

the letter in question was the Griles Letter; indeed, it is possible that Mr. Doxey called Mr.

Rossetti regarding a letter that Mr. Doxey received from or regarding the Band, a letter that

would not be covered by Plaintiffs' FOIA request.   In further support for their claim that the

Griles Letter was shared with the Governor of Utah, Plaintiffs assert that the language of the

Griles Letter "makes it evident that the subject of the letter had been discussed in great detail

with the Governor and his staff," and highlight the fact that the Utah press "knew about the

correspondence only shortly after it was received by the Skull Valley Band."  Pls.' Opp'n at 23.

Ultimately, however, Plaintiffs offer only their speculation that a draft of the Griles Letter was

shared with the Governor of Utah, which does not establish that Defendants have waived the

deliberative process privilege as to these otherwise privileged documents.[8]  As such, the Court

---

[8] Defendants invoke the attorney-client privilege for 11 of the withheld drafts of the
Griles Letter.  *See* Sloca Decl., Ex. H at p. 10 n. 1, p. 13 n. 3, p. 14 n. 1, p. 19 n. 1, p. 19 n. 2, p.
20 n. 1, p. 20 n. 2, p. 21 n. 1, p. 21 n. 2, p. 22 n. 1, and p. 22 n. 2.  The attorney-client privilege
"is not limited to communications made in the context of litigation, but extends to all situations
in which an attorney's counsel is sought on a legal matter," as well as "an attorney's written
communications to a client."  *Coastal States*, 617 F.2d at 866.  In order to claim the attorney-
client privilege, Defendants must demonstrate that the documents in question were subject to
confidentiality both at the time of the communication and since then.  *Id.* at 863.  Here, each of
the cover letters accompanying Defendants' FOIA productions – which are incorporated by
reference into Ms. Sloca's Declaration – states that "[a]ll portions of these documents that have
been withheld under the attorney work-product privilege have been held confidential by the

concludes that Defendants have met their burden and have properly withheld the drafts of the

Griles Letter described in Defendants' *Vaughn* index at p. 10 n.1, p. 13 n. 2, p. 13 n. 3, p. 14 n. 1,

p. 15 n. 1, p. 19 n. 1, p. 19 n. 2, p. 20 n. 1, p. 20 n. 2, p. 21 n. 1, p. 21 n. 2, p. 22 n. 1, p. 22 n. 2,

and p. 23 n. 1.

> 2.      *Specific Withholdings Challenged in Plaintiffs' Opposition*

In their Opposition to Defendants' Motion for Summary Judgment, Plaintiffs specifically

challenge Defendants' withholding of three documents in whole or in part, based on speculation

that these documents "likely refer to third party communications."  Pls.' Opp'n at 18-19.

However, the Court's review of Defendants' *Vaughn* index suggests that these documents have

been properly withheld pursuant to Exemption 5.

First, Plaintiffs challenge Defendants' withholding of a "three paragraph document

entitled 'Rossetti (2-24-03) Notes for Meeting with Governor of Utah,'" which Defendants assert

"reflects internal deliberations/privileged communications."  Pls.' Opp'n at 18; Sloca Decl., Ex.

H at 14 n. 1.  Plaintiffs speculate that Counselor Rossetti's notes likely "refer[] to information

gleaned from other, previous communications with Governor Leavitt and his staff."  Pls.' Opp'n

at 18.  However, the deliberative process privilege applies where "the selection of the facts

thought to be relevant clearly involves the formulation or exercise of policy-oriented judgment or

the process by which policy is formulated."  *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1539

---

agency."  *See, e.g.,* Sloca Decl., Ex. C (7/14/03 Letter from S. Sloca to L. Bear) at 4.  Moreover,
Defendants' *Vaughn* index supports their invocation of the attorney-client privilege insofar as it
indicates that the drafts in question were sent by or to an attorney.  *See* Sloca Decl., Ex. H at p.
10 n. 1, p. 13 n. 3, p. 14 n. 1, p. 19 n. 1, p. 19 n. 2, p. 20 n. 1, p. 20 n. 2, p. 21 n. 1, p. 21 n. 2, p.
22 n. 1, and p. 22 n. 2.  As such, it appears that Defendants have properly withheld 11 of the 14
drafts of the Griles Letter on the grounds of the attorney-client privilege.

(D.C. Cir. 1993).   Furthermore, the deliberative process privilege covers "subjective documents which reflect the personal opinions of the writer rather than the policy of the agency."  *Coastal States*, 617 F.2d at 866.   As such, even if Plaintiffs are correct in their speculation that Counselor Rossetti's notes include factual information regarding the positions taken by third parties, those notes are still covered by the deliberative process privilege because they represent one individual's selection of facts he believes relevant to an ongoing policy-making process and not a statement of agency policy.[9]

Similarly, Plaintiffs challenge Defendants' withholding of a February 13, 2003 document titled "Options for Secretarial Review of the Proposed Lease for Storage of Spent Nuclear Fuel on the Skull Valley Indian Reservation," which Defendants assert "reviews, for the purpose of intra-agency deliberations, the pros and cons on three options relating to the lease at issue."  Pls.' Opp'n at 19; Sloca Decl., Ex. H at 16 n. 2.   Plaintiffs claim that it is "highly likely that this Option Paper refers to positions and statements taken previously by third parties, and possibly, also representations and statements made by Interior officials to those third parties."  Pls.' Opp'n at 19.   However, even if this is true, factual material included in the Option Paper is covered by the deliberative process privilege because the selection of facts and incorporation of factual material into a paper reviewing "the pros and cons on three options relating to the lease at issue" inherently involves the "exercises of discretion and judgment calls" protected by the deliberative process privilege.  *Mapother*, 3 F.3d at 1539.

Finally, Plaintiffs challenge Defendants' withholding of notes believed to have been

---

[9] The Court notes that Plaintiffs do not challenge Defendants' invocation of the attorney-client privilege with respect to Counselor Rossetti's notes.  Pls.' Opp'n at 18; Sloca Decl., Ex. H at 14 n. 1.

written by David Bernhardt, the Director of the Office of Congressional and Legislative Affairs,

during an April 11, 2003 meeting with the Utah Congressional Delegation.  Pls.' Opp'n at 19;

Sloca Decl., Ex. H at 14 n. 2.  Plaintiffs assert that Defendants have an obligation to "state that

nothing else in these notations contains information on a non-privileged communication," Pls.'

Opp'n at 19; however, Defendants' *Vaughn* index describes these redacted notes as representing

Mr. Bernhardt's "selective impressions" of the meeting.  As such, Defendants have demonstrated

that the notes in question are covered by the deliberative process privilege because they "reflect

the personal opinions of the writer rather than the policy of the agency."  *Coastal States*, 617

F.2d 854.

### 3.     *Documents Withheld But Not Specifically Challenged by Plaintiffs*

Having concluded that Defendants have properly invoked the deliberative process

privilege in each of the instances discussed above, the Court will briefly review the other entries

included in Defendants' *Vaughn* index, which comprise several categories of documents.  The

Court concludes that Defendants' *Vaughn* index demonstrates that they have appropriately relied

upon FOIA Exemption 5 in withholding each document in whole or in part.

- • Documents reflecting pre-decisional policy recommendations: the following

    documents and/or portions of documents include recommendations by agency

    employees regarding the Department's decision on whether to grant final approval

    of the PFS lease, which are covered by the deliberative process privilege because

    they reflect the personal opinions of the writer rather than the policy of the

    agency, *see Coastal States*, 617 F.2d at 866: p. 1, n. 1; p. 6 n. 2; p. 7, n. 3; p. 8, n.

    1; p. 8, n. 2; p. 9, n. 1; p. 9, n. 2; p. 12, n. 1; p. 15, n. 2.

- <u>Documents reflecting the Department of the Interior's pre-decisional posture</u>: the following documents and/or portions of documents are covered by the deliberative process privilege because they may inaccurately reflect or prematurely disclose the views of the agency and could lead to confusion of the public, *see Coastal States*, 617 F.2d at 866; *Russell*, 682 F.2d at 1048: p. 4, n. 2; p. 10, n. 2; p. 17, n. 2; p. 23, n. 2.

- <u>Documents reflecting the selective impressions of agency employees</u>: the following documents and/or portions of documents are covered by the deliberative process privilege because they reflect the personal opinions of the writer rather than the policy of the agency, *see Coastal States*, 617 F.2d at 866, and because their disclosure could lead to confusion of the public, *id.*; *see also Russell*, 682 F.2d at 1048: p. 3, n. 1; p. 3, n. 2; p. 5, n. 1; p. 6, n. 1; p. 7, n. 1; p. 10, n. 2; p. 13, n. 1; p. 15, n. 2; p. 16, n. 1; p. 17, n. 1; p. 18, n. 2; p. 23, n. 2.

- <u>Documents covered by the attorney-client privilege</u>: Plaintiffs do not directly challenge Defendants' invocation of the attorney-client privilege; however, the Court notes that each of the following documents is covered by the attorney-client privilege because it was created by or addressed to an attorney, and the subject of most of these documents indicates that they reflect a client seeking an attorney's counsel on a legal matter or an attorney's written communications to a client. *See Coastal States*, 617 F.2d at 862 (discussing the scope of the attorney-client privilege within the context of FOIA Exemption 5); p. 2, n. 1; p. 2, n. 2; p. 4, n. 1; p. 5, n. 2; p. 6, n. 1; p. 12, n. 2; p. 18, n. 1.

In light of the foregoing, the Court concludes that Defendants have met their burden of demonstrating that they properly invoked the deliberative process and attorney-client privileges included in Exemption 5.

        E.      *Defendants Have Released All Reasonably Segregable Factual Material*

Defendants may properly withhold certain materials under FOIA's enumerated exemptions; however they must release "any reasonably segregable portions" of responsive documents once they have redacted the exempted information. *See* 5 U.S.C. § 552(b). The segregability requirement is of such great import that this Court has an affirmative duty to engage in its own segregability analysis, regardless of Plaintiff's pleadings. *See Billington v. Dep't of Justice*, 233 F.3d 581, 586 (D.C. Cir. 2000). While the segregability analysis is necessary, not all material is amenable to segregation. The United States Court of Appeals for the District of Columbia Circuit has long held that non-exempt information may be withheld if it is "inextricably intertwined" with exempt information. *See Trans-Pacific Policing Agreement*, 177 F.3d at 1027 (quoting *Mead Data*, 566 F.2d at 260).

Here, Ms. Sloca avers in her Declaration that "[t]he pages of each document listed [in Defendants' *Vaughn* index] were evaluated for segregability during the course of all phases of the administrative process. . . Where a document was withheld in its entirety, the Department determined that no meaningful portions could reasonably be released without destroying the integrity of such document as a whole." Sloca Decl. ¶ 11. Defendants further assert that their "release of documents with appropriate redactions, rather than the complete withholding of documents, demonstrates that [they] reviewed all records carefully and determined what portions could be released and what portions needed to be withheld." Defs.' Stmt. ¶ 11; Defs.' Mot. for

Summ. J. at 12.

For their part, Plaintiffs assert that "[l]ittle or no attempt was made to segregate the factual record of non-privileged communications with opponents of the Band and the PFS project." Pls.' Cross-Mot. at 21. However, as discussed above, Plaintiffs offer only speculation that non-privileged factual material is even included in the documents withheld, and insofar as the selection and inclusion of factual material in deliberative documents constitutes an exercise of judgment by agency personnel, that exercise is covered by the deliberative process privilege. Plaintiffs also take Defendants to task for the fact that the "Vaughn Index in this case doesn't even address issues of segregability, or 'inextricably intertwined' information." Pls.' Opp'n at 24. Plaintiffs are correct that Defendants' *Vaughn* index does not use the phrase "inextricably intertwined;" however, it does detail the precise information withheld from each document and how that material is dispersed throughout the document. *Mead Data Cent. Inc.*, 566 F.2d at 261. Moreover, Ms. Sloca avers in her Declaration that Defendants evaluated the documents included in the *Vaughn* index for segregability and, as she reports in her Declaration, this review resulted in an additional release of records previously withheld in whole or in part. Sloca Decl. ¶ 11, Ex. I. The Court's review of the documents that comprise this additional release – which will be viewed as a sample of the documents withheld in whole or in part – demonstrates that Defendants have generally released documents and redacted only particular portions of documents. Sloca Decl., Ex. I.

The Court thus concludes that Defendants have met their summary judgment burden by demonstrating that they fully discharged their FOIA obligations by conducting a reasonable and adequate search for documents, providing a *Vaughn* index that demonstrates that they properly

invoked applicable FOIA exemptions, and releasing all reasonably segregable factual material from responsive documents.  *See Moore*, 916 F. Supp at 35 (citing *Weisberg v. Dep't of Justice*, 705 F.2d at 1350 (D.C. Cir. 1983)).

## IV:  CONCLUSION

For the reasons set forth above, the Court shall grant Defendants' Motion for Summary Judgment, deny Plaintiffs' Cross-Motion for Partial Summary Judgment, and deny Defendants' Motion to Strike Plaintiffs' Notice of Final Administrative Decision in Related Proceeding.  An appropriate Order accompanies this Memorandum Opinion.

Date:   March 26, 2007

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge